**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

  v.

LAMAINT DUANE WALLIN aka
"L",

      Defendant - Appellant.

No. 98-1238

(D. Colorado)

(D.C. No. 97-CR-237-D)

## ORDER AND JUDGMENT[*]

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a guilty plea, Lamaint Duane Wallin was convicted on one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1).  Wallin now appeals the district court's denial of the government's motion to depart downward from the United States Sentencing Guidelines pursuant to U.S.S.G. § 5K1.1.  He contends that the district court misapplied the guidelines by 1) failing to give proper consideration to the government's evaluation of his cooperation, and 2) basing its refusal on grounds that violate the doctrine of separation of powers.  Because we lack jurisdiction to review the district court's discretionary refusal to depart, we dismiss the appeal.

## BACKGROUND

During April 1997, a Metro Gang Task Force (metro force) began investigating a cooperating witness's report of drug activities involving Wallin.  On June 17, 1997, police executed a search warrant at Wallin's residence and arrested him.  At that time, police discovered crack cocaine in Wallin's pocket; additional drugs, drug paraphernalia, and money, as well as a loaded gun, were found in Wallin's bedroom closet.  On July 10, 1997, an eight-count federal indictment against Wallin and three codefendants was returned.

Following the denial of his motion to suppress, Wallin agreed to cooperate with the government.  In August and September 1997, Wallin met with metro

force agents and provided information regarding area drug activity. On November 19, 1997, Wallin and the government signed a Fed. R. Crim. P. 11(e)(1)(C) plea agreement by which Wallin agreed to enter a guilty plea to count five of the indictment, and the government agreed to dismiss the remaining counts against him. R. Vol. I, Tab 77 at ¶¶ 1-2. Pursuant to Rule 11(e)(1)(C), the agreement stipulated a sentence of 108 months as an appropriate disposition of the case, and provided that Wallin would be able to withdraw his plea if the court determined to impose a greater sentence. Id. at ¶ 3. The proposed 108- month sentence was based on the following expressly stated sentencing factors: 1) Wallin's base offense level (after enhancement for firearm possession and reduction for acceptance of responsibility) would be 31, and 2) his criminal history category would be I. Id. at ¶¶ 6-7. The agreement further provided that, if the applicable guideline range exceeded 108 months,[1] and if Wallin's cooperation resulted in substantial assistance, the government would file a § 5K1 motion seeking a 108-month sentence. At the plea hearing, the court deferred its acceptance of the plea until the Presentence Investigation Report (PSR) was completed.

---

[1]The agreement specifically notes that, if Wallin failed to qualify for the safety valve provision, the minimum applicable guideline range would be higher than 108 months. R. Vol. I, Tab 77 at ¶ 7.K.-L.

Contrary to the parties' expectations, the PSR recommended a two-level enhancement for a supervising role in the offense, and it computed a category III for Wallin's criminal history, resulting in a guideline range of 168 to 210 months. The government sought and received two postponements of the sentencing hearing so that it would have time to pursue its investigations of Wallin's information in order to assess whether or not to file a § 5K1.1 motion.

Although the government ultimately filed the motion, it provided scant support for the § 5K.1.1 requirement of substantial assistance.[2] At the sentencing hearing, the court criticized the government's practices, questioned the good faith

---

[2]U.S.S.G. § 5K1.1 p.s. (1997) provides as follows:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
    (1) the courts evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
    (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
    (3) the nature and extent of the defendant's assistance;
    (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
    (5) the timeliness of the defendant's assistance.

of the filing, and denied the motion as not well founded.[3]  However, the court

_____

[3]The government's motion stated that, although it believed Wallin's information to be truthful, no arrests had been made and none were anticipated in the near future.  Nonetheless, it summarily indicated its belief that the information which Wallin provided, though limited in value, was sufficient to support a request for a sentence of 108 months.  R. Vol. I, Tab 109 at ¶ 10.

The court noted the considerable variance between the ranges anticipated in the plea agreement and the range recommended in the PSR, as well as the government's early indication to the probation officer that it would probably not file a § 5K1.1 motion.  The court then stated:

> Now, you filed a 5K motion just very recently, and the way I read this 5K motion, [it] appears to me to be filed for the sole purpose of negating the findings [in the PSR]; and I just don't believe that's a proper purpose of a 5K motion, particularly where the motion by its terms acknowledges that this defendant has provided you with no useful information, there is no indication that you're going to indict anybody, arrest anybody because of what he's told you, and I want to know what's going on.

R. Vol. IV at 3-4.  The court also stated that

> in other circumstances [I have] granted 5K motions and denied them; but I look at them and see if there's enough there to give me some comfort that there has been substantial assistance . . . .  But I just don't understand . . . how you can in good faith file this motion and ask me to seriously consider it for the purpose of giving Mr. Wallin a 108-month sentence, so that's the question which you still have not answered to my satisfaction.

Id. at 7-8.  When the government indicated that it had been unable to establish any further particulars because of the time limitation, the court criticized the filing as premature.  Id. at 9.

In conjunction, but expressly "independent of," its concerns regarding the motion's merits, the court indicated its considerable irritation with the

(continued...)

rejected the PSR's recommended role enhancement, so that the resulting sentencing range was from 135 to 168 months. The court then stated its willingness to impose a sentence of 135 months. After a continuance, Wallin decided not to withdraw his plea, and the court sentenced him to 135 months' imprisonment.

## DISCUSSION

A district court's discretionary decision not to depart downward from the Sentencing Guidelines is unreviewable. See United States v. Fitzherbert, 13 F.3d 340, 344 (10th Cir. 1993); United States v. Munoz, 946 F.2d 729, 730 (10th Cir. 1991). However, we do have jurisdiction to review a sentence if the district court erroneously concluded that it lacked the authority to depart, see United States v. Rowen, 73 F.3d 1061, 1063 (10th Cir. 1996), or if the district court imposed a sentence which violates the law or incorrectly applies the guidelines, see 18 U.S.C. § 3742(a); United States v. Belt, 89 F.3d 710, 714 (10th Cir. 1996).

Attempting to overcome the jurisdictional bar, Wallin characterizes the court's refusal to depart as a misapplication of the guidelines, contending that the

---

[3](...continued)
government's failure to properly evaluate the sentencing factors prior to entering into the plea agreement. R. Vol. IV at 8. It also criticized the government's uneven handling of cases, id. at 7-8, 10, and characterized the motion as a "charade" and "bogus," id. at 7, 11.

court failed to give proper weight to the government's evaluation that his assistance warranted the motion, and that the court rejected the motion on an improper basis.[4] Essentially Wallin argues that the court's approach demonstrated an impermissible intrusion into the government's prosecutorial role in violation of the doctrine of separation of powers. We disagree. Clearly, the court recognized its discretion to depart. Unpersuaded by the motion itself, the court repeatedly sought assurances from the government that might cast a more positive light on the motion. However, it simply found the government's answers unavailing. In this case, the court clearly considered the departure request, and in its discretion, determined that there was insufficient basis for a departure. In these circumstances, we find no misapplication of the guidelines.

DISMISSED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

---

[4]Wallin cites U.S.S.G. § 5K1.1 comment. (n. 3), which provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain."